1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    EVA SPERBER-PORTER; MARK D.)        No. CV-08-1424-PHX-GMS
     SVEJDA,                          )
10                                     )   **ORDER**
                Plaintiffs,           )
11                                     )
     vs.                              )
12                                     )
                                       )
13   EDELTRAUD KELL,                  )
                                       )
14              Defendant.            )
                                       )
15   _____)

16

17         Pending before the Court is the Motion to Dismiss of Defendant Edeltraud Kell. (Dkt.

18   # 17.) For the following reasons, the Court denies the motion except insofar as it requests

19   a stay.[1]

20                              **BACKGROUND**

21         Hermann Viktor Kell, a citizen of Germany, died in 2005. He left wills in both

22   Germany and America. Plaintiff Eva Sperber-Porter claimed $17.5 million under Mr. Kell's

23   American will, and Defendant, the decedent's wife, contested that claim in Arizona probate

24   court.  The parties agreed to mediation, and they eventually entered into a settlement

25

26   _____

27         [1]Plaintiffs have requested oral argument. That request is denied because the parties
     have thoroughly discussed the law and the evidence, and oral argument will not aid the
28   Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d
     724, 729 (9th Cir. 1991).

agreement.  In exchange for settling the case, Plaintiffs promised to pay Defendant $6.3 million in the form of a promissory note.  Specifically:

> [Plaintiffs] shall execute a Promissory Note (individually and on behalf of their community) in favor of [Defendant].  The principal amount of the Note shall be $6,300,000.00. . . . The Note shall be secured by a pledge [of] (i) the Schedule B assets distributed to [Sperber-Porter]; and (ii) the assets or interests acquired (through Mortgages, Ltd.) by [Sperber-Porter] or any affiliate of [Sperber-Porter] utilizing the proceeds [sic] of any of the assets of the Estate.

(Dkt. # 17 Ex. 3 at 15 ¶ 15.)  The Schedule B assets to which this paragraph refers appear to be Plaintiff Sperber-Porter's limited partnership interests in several partnerships and accounts.

Pursuant to the settlement agreement, Plaintiff Sperber-Porter received a $17.5 million distribution under the will.  Plaintiffs then attempted to execute a promissory note that, among other things, lacked a provision for Defendant to receive deeds of trust on the real estate owned by the limited partnerships as security for the note's performance.  Defendant objected to the proffered promissory note on the grounds that it lacked an acceleration provision, provided for only a $250 payment penalty (which, Defendant argues, offers no practical deterrence on a $6.3 million note), was improperly amortized, and provided as security "partnership interests that could be liquidated into worthless shells."  (Dkt. # 17 at 2.)  Defendant therefore refused to accept the promissory note.  The parties went back before the mediator but were unable to resolve the dispute.

At that point, Southwest Fiduciary, Inc., the personal representative of the deceased Mr. Kell's estate, filed a Motion for Equitable Enforcement of the Settlement Agreement in probate court.  Southwest Fiduciary pointed out that the dispute between the parties is over the nature of the promissory note (specifically the security interest) obligated by paragraph fifteen of the settlement agreement.  Although Southwest Fiduciary noted that it was "not interested in the quality or nature of the security which will be provided to Mrs. Kell" (Dkt. # 17 Ex. 3 at 6), it nevertheless argued that Defendant had "been deprived of the benefit of her bargain" because Plaintiff Sperber-Porter received her $17.5 million distribution but

1  failed to pay Defendant anything (*id.* at 7).  Southwest Fiduciary thereupon moved the court
2  to interpret the settlement agreement and order the parties to comply with it.

3      The probate court approved the settlement agreement and recognized that the parties
4  "do have a disagreement as to the interpretation of paragraph number 15," but the court did
5  not immediately resolve that disagreement.  (Dkt. # 17 Ex. 4 at 1-2.)  Instead, the court
6  scheduled a status conference and ordered the parties to prepare a proposed schedule for
7  resolving the issues remaining in the case.

8      Defendant eventually moved the probate court for summary judgment.  In response,
9  Plaintiffs moved to strike Defendant's motion, arguing that the probate court's reference to
10  any remaining dispute was "an advisory opinion" and that "probate jurisdiction on this
11  contested matter ended with the final settlement."  (Dkt. # 18 Ex. 10 at 3.)  Plaintiffs also
12  filed an opposition to the motion for summary judgment, arguing that paragraph fifteen of
13  the settlement agreement does not require them to securitize the promissory note with deeds
14  of trust, that Defendant breached the settlement agreement by refusing to accept the note
15  without such security, and that Defendant's breach "excuses the necessity for [Plaintiffs] to
16  tender performance," or at least that Plaintiffs "have no obligation to pay [Defendant]
17  anything until she cures her breach."  (Dkt. # 19 Ex. 3 at 16.)  Plaintiffs also argued that
18  "Mrs. Kell's breach of the Settlement Agreement[] gives rise to a claim for damages in favor
19  of [Plaintiffs]."  (*Id.*)

20      After oral argument, the probate court denied both the motion for summary judgment
21  and the motion to strike, and set the matter for an evidentiary hearing pursuant to *Taylor v.*
22  *State Farm Mutual Automobile Insurance Co.*, 175 Ariz. 148, 854 P.2d 1134 (1993)
23  (authorizing state courts to hold evidentiary hearings to determine whether language in a
24  contract is ambiguous and, if so, whether to proceed to trial).  The evidentiary hearing
25  occurred on January 21, 2009, at which time the court took the matter under advisement.  As
26  far as this Court is aware, the probate court's disposition is still pending.

27      Around the same time that Plaintiffs filed their motion to strike in the probate court,
28  they also filed the complaint underlying this action in federal court.  (Dkt. # 1.)  Plaintiffs'

1   First Amended Complaint makes two claims.  First, Plaintiffs seek a declaratory judgment

2   providing that they are not required to give Defendant deeds of trust on the limited

3   partnerships' real property as security for the promissory note, and also providing that

4   Defendant's rejection of the promissory note discharges Plaintiffs' obligations to pay

5   Defendant anything at all.  (Dkt. # 6 at 5-7.)  Second, Plaintiffs assert that Defendant

6   committed breach of contract "by demanding security under the terms of the Settlement

7   Agreement that she is not entitled to receive and by otherwise disavowing that Agreement."

8   (*Id.* at 7-8.)

9       Plaintiffs asserted that this Court has jurisdiction based on the diversity of citizenship

10  between the parties.  *See* 28 U.S.C. § 1332(a)(1) (2006) ("The district courts shall have

11  original jurisdiction of all civil actions where the matter in controversy exceeds the sum or

12  value of $75,000, exclusive of interest and costs, and is between . . . citizens of different

13  States.").  Defendant now advances a motion to dismiss this case under Rule 12(b)(1) of the

14  Federal Rules of Civil Procedure.  (Dkt. # 17.)

15                                        **DISCUSSION**

16  **I.   Legal Standard**

17      Federal Rule of Civil Procedure 12(b)(1) permits motions to dismiss for a lack of

18  subject-matter jurisdiction.  "The party asserting jurisdiction has the burden of proving all

19  jurisdictional facts."  *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir.

20  1990) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

21  **II.  Analysis**

22      Defendant does not dispute the amount in controversy or the citizenship of the parties,

23  but rather argues that this Court cannot hear the case because it involves a probate matter.

24  (Dkt. # 17 at 5-6, 7-8.)  Defendant points out that Arizona law vests exclusive jurisdiction

25  over probate matters in the probate courts, that a federal court sitting in diversity may not

26  hear any matter that a state court sitting in general jurisdiction could not hear, and that the

27  federal probate exception bars federal courts sitting in diversity jurisdiction from deciding

28

1  probate matters.  (*See id.*)  Plaintiffs dispute none of this, but rather challenge the notion that

2  this suit involves a probate matter.  (Dkt. # 18 at 6-11.)

3       Plaintiffs are correct in stating that they are not asking this Court to probate the estate

4  of Mr. Kell.  Rather, Plaintiffs are asking this Court to decide, through the vehicle of

5  declaratory judgment and breach of contract claims, whether the same arguments advanced

6  in the state court seeking enforcement and/or interpretation of the settlement agreement are

7  correct.  Thus, neither the fact that Arizona vests jurisdiction over probate matters with its

8  probate courts, nor the fact that federal courts are generally prohibited from deciding probate

9  matters, renders dismissal proper.

10      Defendant also argues that Plaintiffs are impermissibly attempting to collaterally

11  attack the probate court's determination that it continues to have jurisdiction over the case.

12  (Dkt. # 17 at 6-7.)  Although certain sections of their response do communicate Plaintiffs'

13  belief that the state court erred in determining its own jurisdiction (*see* Dkt. # 18 at 4-6),

14  Plaintiffs' Complaint never asks this Court to decide whether the probate court had

15  jurisdiction to hear the case (*see* Dkt. # 9 at 5-8).  Rather, Plaintiffs only ask this Court to

16  decide the same substantive issues that are being litigated in the state court.  Thus, Plaintiffs

17  do not seek relief under the argument Defendant suggests.  Nor is Plaintiffs' articulation of

18  the same arguments in both courts tantamount to a collateral attack on the state court's

19  jurisdictional determination, for there is no indication in the record that the probate court

20  decided that it had *exclusive* jurisdiction to decide these issues as a matter of probate.  The

21  Court therefore cannot grant Defendant relief under the theory that Plaintiffs are collaterally

22  attacking the state court's jurisdictional determination.  Indeed, whether the state court erred

23  in determining its own jurisdiction is not a matter that this Court could decide.

24      Defendant's final argument is that the Court, if it does not dismiss the case, should at

25  least stay the federal proceedings pursuant to *Colorado River Water Conservation District*

26  *v. United States*, 424 U.S. 800 (1976).  (Dkt. # 17 at 8-9 n.2.)  Considerations of "wise

27  judicial administration, giving regard to conservation of judicial resources and

28  comprehensive disposition of litigation" may, in appropriate cases, result in a federal court

staying litigation when there is concurrent state court litigation involving the same matter. *Colorado River*, 424 U.S. at 817.  The Supreme Court has counseled that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *id.*, and that the doctrine of *Colorado River* should be invoked only in "exceptional" circumstances, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983) ("*Moses Cone*").[2]

Courts have identified several factors to be considered in deciding whether a case should be stayed under *Colorado River*.  These include: (1) whether the state or federal court has assumed jurisdiction over property, (2) the relative convenience of the two forums, (3) the desirability of avoiding piecemeal litigation, (4) the order in which the forums obtained jurisdiction, (5) whether state or federal law controls, and (6) whether the state proceeding is adequate to protect the parties' rights.  *See Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989) (citing *Colorado River*, 424 U.S. at 818; *Moses Cone*, 460 U.S. at 25-26).  The Ninth Circuit has identified at least three additional factors: (7) whether the state and federal cases are "substantially similar," (8) whether the second suit filed by the plaintiff is an attempt to forum shop or avoid adverse rulings by the state court, and (9) whether the state proceedings will resolve all of the issues in the federal action.  *See id.* at 1416-17; *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 912-13 (9th Cir. 1993).  The relevant factors in a *Colorado River* analysis "are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical checklist.'" *Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988) (quoting *Moses Cone*, 460 U.S. at 16).

Upon application of the factors, the Court concludes that this case should be stayed.

**(1) Whether the state or federal court has assumed jurisdiction over property**

---

[2]"Although commonly referred to as an abstention doctrine, the Supreme Court has flatly rejected this categorization." *Nakash v. Marciano*, 882 F.2d 1411, 1415 n.5 (9th Cir. 1989) (citing 17A C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4247, at 150-51 (2d ed. 1988)).

To the extent that this factor is applicable, it favors a stay.  The precise nature of the assets at issue here are not entirely clear at this point in the federal litigation, but there does not appear to be any tangible physical property in the control of the court.  Thus, it appears that this factor does not apply.  *See Morisada Corp. v. Beidas*, 939 F. Supp. 732, 737 (D. Haw. 1995) ("Consideration of this factor is unhelpful here as the claims at issue do not concern tangible physical property."); *Ross v. U.S. Bank. Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1022 (N.D. Cal. 2008) ("When there is no *res* in control of either court and the fora are equally convenient, the first two *Colorado River* factors are irrelevant.") (citing *Nakash*, 882 F.2d at 1415, 1415 n.6).  However, to the extent that probate assets are implicated, those assets are under the jurisdiction of the state probate court.  *See Gonzalez v. Superior Court*, 117 Ariz. 64, 66, 570 P.2d 1077, 1079 (1977) ("[B]y enacting the new probate code the legislature intended to confer upon the Superior Court sitting in probate its full constitutional jurisdiction in matters which might arise affecting estates.").  In either case, this factor does not weigh against staying this action.

### (2) The relative convenience of the two forums

This factor does not carry significant weight either way.  The federal and state courthouses are located within blocks of each other.  *See Morisada*, 939 F. Supp. at 737 ("Here, the federal forum does not create any inconvenience because it is located down the street from the state forum.  Accordingly, this factor carries no weight.").

### (3) The desirability of avoiding piecemeal litigation

This factor strongly favors staying this action.  "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters*, 843 F.2d at 1258.  This may be the most important factor in a *Colorado River* analysis.  *See Moses Cone*, 460 U.S. at 16 ("By far the most important factor in our decision to approve the dismissal [in *Colorado River*] was the clear federal policy . . . [of] avoidance of piecemeal adjudication[.]").

In this federal action, Plaintiffs have raised the same issues that they are currently litigating in state court.  For instance, on the declaratory judgment claim, Plaintiffs'

Complaint asks the Court to declare "that Plaintiff Eva Sperber-Porter is not required to provide Defendant with deeds of trust on limited partnership real property for purposes of securing the obligations evidenced by the $6.3 million Note." (Dkt. # 9 at 6.)  Plaintiffs' opposition to Defendant's motion for summary judgment in the state court makes the same argument:

> Mrs. Kell's claim [that] she is entitled to deeds of trust on limited partnership real estate to secure performance of the Note is meritless. . . . This Court must enforce the settlement as written even if Mrs. Kell thinks enforcement would be harsh. Mrs. Kell is not entitled to deeds of trust as a matter of law.

(Dkt. # 19 Ex. 3 at 3; *see also id.* at 7-8.)  Plaintiffs' Complaint also asks this Court to declare either that "Defendant's rejection of the Promissory Note constitutes a discharge of the obligations of Plaintiffs to pay the Note" or that "Plaintiffs are not obligated to make any payments of interest or principal to Defendant Kell until such time as she performs her obligations under the Settlement Agreement." (Dkt. # 9 at 7.)  Again, Plaintiffs are pursuing the same argument in the state court for the purposes of its proceedings.  Plaintiffs argued that Defendant's course of action "excuses the necessity for [Plaintiffs] to tender performance" and that Plaintiffs "have no obligation to pay [Defendant] anything until she cures her breach." (Dkt. # 19 Ex. 3 at 16.)

On the breach of contract claim, Plaintiffs' Complaint seeks a finding that "Defendant has breached the Settlement Agreement by demanding security under the terms of the Settlement Agreement that she is not entitled to receive and by otherwise disavowing that agreement." (Dkt. # 9 at 7.)  Plaintiffs' briefing before the state court makes the same argument: "Mrs. Kell has breached the Settlement Agreement by demanding deeds of trust she is not entitled to receive and by rejecting the signed Note and Security Agreement delivered to her by [Plaintiffs]." (Dkt. # 19 Ex. 3 at 4.)  In both cases, Plaintiffs argue that the breach entitles them to damages. (Dkt. # 9 at 8; Dkt. # 19 Ex. 3 at 16.)

Plaintiffs are, in short, seeking to litigate the very same issues in this Court that they are now advancing in state court.  In fact, Plaintiffs are essentially seeking a declaratory or substantive judgment that their arguments in the state court are correct.  To permit continued

litigation of the federal case would not only require duplicate efforts in both courts, but it would also raise the specter of inconsistent decisions. *See Am. Int'l Underwriters*, 843 F.2d at 1258. Thus, this factor weighs strongly in favor of staying the case.

### **(4) The order in which the forums obtained jurisdiction**

This factor weighs in favor of a stay. Not only was the state court action initiated before the federal action, but it was initiated over a year earlier and has progressed to a significantly later stage than the federal litigation. *See Nakash*, 882 F.2d at 1413 (staying a federal action in a case in which the state action commenced years earlier and involved numerous hearings, much evidentiary discovery, and the issuance of a number of substantive orders). Thus, this factor suggests that a stay is proper.

### **(5) Whether state or federal law controls**

To the extent this factor applies, it weighs in favor of a stay. The only predicate for federal jurisdiction is the diversity of citizenship between the parties, and there are no federal claims. Thus, state law will apply. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The Ninth Circuit has explained that while the presence of federal law issues weighs strongly against granting a stay, the presence of state law issues does not have the same weight in favor of a stay, but rather renders this factor less important. *See Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1370 (9th Cir. 1990). Thus, this factor does not appear to have significant weight. *See id.*; *but see Morisada*, 939 F. Supp. at 740 ("[E]ven though the Ninth Circuit has held that garden variety state law issues should remain in federal court, the United States Supreme Court in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966), discussing the exercise of pendent jurisdiction, has held that state law claims should be decided in state court.") (parallel citations omitted). Insofar as this factor merits weight, it counsels in favor of a stay.

### **(6) Whether the state proceeding is adequate to protect the parties' rights**

To the extent that this factor applies, it weighs in favor of a stay. "This factor involves the state court's adequacy to protect federal rights, not the federal court's adequacy to protect state rights." *Travelers*, 914 F.2d at 1370 (emphases omitted). As explained

above, the essence of both actions is whether Plaintiffs are required to securitize their promissory note with deeds of trust, whether Defendant breached the settlement agreement by refusing to accept the note and demanding such deeds of trust, and whether Plaintiffs' obligations were discharged by Defendant's actions. Because resolution of these arguments in the state court will dispose of the claims at issue here, and because Plaintiffs do not argue to this Court that the state court is incompetent to resolve these arguments, the state court proceeding is entirely adequate to protect the parties' rights. However, "[t]his factor, like choice of law, is more important when it weighs in favor of federal jurisdiction." *Id.*; *see also Morisada*, 939 F. Supp. at 740-41 ("[I]t appears that the Ninth Circuit has not applied this factor against the exercise of federal jurisdiction, only in favor of it."). Thus, this factor carries little weight here, although to the extent that it does apply it counsels that a stay is proper.

### (7) Whether the state and federal cases are "substantially similar"

This factor weighs in favor of staying the federal case. "We should be particularly reluctant to find that the actions are not parallel when the federal action is but a 'spin-off' of more comprehensive state litigation." *Nakash*, 882 F.2d at 1417. As described above, the state and federal cases here are not just "substantially similar"; they are virtually identical, as they both center on whether Defendant is entitled to deeds of trust under the settlement agreement and whether Plaintiffs are excused from paying Defendant. The fact that the party asserting relief is reversed in the two cases is of no import. *See id.* at 1416 (finding that state and federal litigation was substantially similar even though the state action focused on one party's wrongdoing and the federal action alleged that the other party was the wrongdoer). The focus of litigation in both the state and federal actions is the effect of the parties' behavior on the settlement agreement, which the Ninth Circuit has held establishes substantial similarity. *See id.* ("After reviewing the pleadings in these cases, we conclude that the two actions are substantially similar. *All of these disputes concern how the respective parties have conducted themselves since Nakash purchased a portion of Guess.*")

1    (emphasis added).  This factor therefore strongly suggests that the Court should stay the

2    action.

3         Plaintiffs argue that the state court proceeding does not involve a determination of

4    whether either of the parties breached the settlement agreement, but rather is limited to a

5    determination of the meaning of paragraph fifteen of the settlement agreement (Dkt. # 18 at

6    6-7) – despite the fact that it is Plaintiffs themselves who advance the breach of contract

7    arguments in state court (Dkt. # 19 Ex. 3 at 15-16).  Regardless, even under Plaintiffs'

8    construction, a stay is proper.  If the state court decides the breach of contract claims, that

9    will necessarily dispose of the analogous claims here.  If, on the other hand, the state court

10   only decides the interpretation of paragraph fifteen, a determination of the meaning of that

11   provision is a necessary predicate to a determination of whether the provision has been

12   breached.  Because Plaintiffs do not even attempt to argue that the state court is not

13   undertaking such a determination, the Court would still be required to stay the matter pending

14   resolution of the state court proceeding.

15        **(8) Whether the second suit is an attempt to forum shop or avoid adverse rulings**

16        This factor weighs in favor of granting a stay.  "[T]his Circuit has held that forum

17   shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse

18   rulings made by the state court or to gain a tactical advantage from the application of federal

19   court rules." *Travelers*, 914 F.2d at 1371; *see also Thompson v. Ashner*, 601 F. Supp. 471,

20   475 (N.D. Ill. 1985) (staying a federal action under *Colorado River* because the plaintiff

21   sought preliminary injunctive relief in order to "short-circuit a parallel six-year old state court

22   suit[,]" creating the possibility of a "race to judgment.").  Plaintiffs filed this suit at the same

23   time that they filed their motion to strike in the state court, essentially asking this Court to

24   declare, as a matter of law, that the substantive arguments that they are making in the state

25   court are correct.  Plaintiffs' conduct presents a classic case of a party attempting to insulate

26   itself from a potentially adverse state court ruling by presenting the very same arguments to

27   a federal court.  A stay is therefore strongly supported.  *See Nakash*, 882 F.2d at 1417

28

1   (stating that "an attempt to forum shop" or to "avoid adverse rulings by the state court" is a

2   factor that "weighs strongly in favor of abstention").

3        **(9) Whether the state proceedings will resolve all issues in the federal action**

4        This factor favors staying the case. A district court should not stay an action under

5   *Colorado River* if there is "substantial doubt" as to whether the state proceedings would

6   resolve the federal action. *Intel Corp.*, 12 F.3d at 913; *see also Moses Cone*, 460 U.S. at 28

7   (holding that a federal court should not grant a stay or dismissal under *Colorado River* if

8   there is "substantial doubt" that "the parallel state-court litigation will be an adequate vehicle

9   for the complete and prompt resolution of the issues between the parties"). Here, there is no

10  substantial doubt that resolution of the state case will resolve the federal action. The

11  arguments made to the two courts are precisely the same, and thus the state court's findings

12  for or against Plaintiffs on their arguments will necessarily determine the outcome of this

13  action. A stay is therefore supported.

14       In sum, not a single factor weighs against staying the action, and most of the factors

15  weigh in favor of doing so, several of them quite strongly. The Court will therefore stay this

16  action pending resolution of the state case.

17  **III.   Attorneys' Fees**

18       Defendant requests the attorneys' fees and costs incurred in defending this action

19  pursuant to the terms of the settlement agreement, which provides that such fees shall be

20  awarded to the prevailing party in an action to enforce or declare the parties' rights under the

21  agreement. The Court here has not dismissed the case, and has not enforced or declared the

22  parties' rights thereunder. Rather, the Court has only stayed the case pursuant to *Colorado*

23  *River*. The Court will therefore reserve judgment on any attorneys' fees claim until the state

24  court has issued its ruling and a determination of which party has prevailed in the litigation

25  is possible.

26       Defendant also asks for an award of attorneys' fees pursuant to Federal Rule of Civil

27  Procedure 11 as a sanction for causing unnecessary delay and needlessly increasing the cost

28  of litigation. The Court cannot say that Plaintiffs' Complaint is so baseless that it merits a

1  sanction award. *See* Fed. R. Civ. P. 11(b)(1) (providing that a case may not be brought "for

2  any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the

3  cost of litigation."). It is conceivable under various possible resolutions of the state court

4  matter that litigation of Plaintiffs' claims in this Court may prove proper. The Court

5  therefore will not award attorneys' fees under Rule 11.

6                                      **CONCLUSION**

7        This suit does not request the Court to probate a will, nor does it seek to collaterally

8  attack the state court's determination of its own jurisdiction. However, the balance of

9  *Colorado River* factors counsel that this case should be stayed.

10       **IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Dkt. # 17)

11 is **DENIED** except insofar as it requests a stay.

12       **IT IS FURTHER ORDERED** that this action is **STAYED** pending resolution of the

13 state court action.

14       **IT IS FURTHER ORDERED** directing the parties to file a joint status report on **July**

15 **2, 2009**, and every ninety (90) days thereafter until this matter is either resolved or the stay

16 is lifted.

17       DATED this 2nd day of April, 2009.

18

19                                    _____
                                          G. Murray Snow
20                                   United States District Judge

21

22

23

24

25

26

27

28