**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| EVA SPERBER-PORTER; MARK D. SVEJDA, <br><br> Plaintiffs, <br><br> vs. <br><br> EDELTRAUD KELL, <br><br> Defendant. | No. CV-08-01424-PHX-GMS <br><br> **ORDER** |

Pending before the Court is the Motion for Reconsideration of Plaintiffs Eva Sperber-Porter and Mark D. Svejda. (Dkt. # 21.) For the following reasons, the Court denies the motion.[1]

## BACKGROUND

In this case, the parties have been engaged in a protracted state court dispute about the American will of Hermann Viktor Kell, a deceased citizen of Germany, who was the husband of Defendant Edeltraud Kell. Plaintiff Eva Sperber-Porter claimed $17.5 million under the will, and Defendant contested that claim. After mediation, the parties entered into a

---

[1] Plaintiffs have requested oral argument. That request is denied because the parties have thoroughly discussed the law and the evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

settlement agreement in which Plaintiffs promised to pay Defendant $6.3 million in the form of a promissory note. A dispute soon arose about the nature of that note, specifically over whether paragraph fifteen of the agreement required Plaintiffs to securitize the note with certain affiliate assets.[2]

Plaintiffs, after receiving the $17.5 million distribution under the will, attempted to execute a promissory note that was not securitized by the affiliate assets. Defendant refused to accept the note.[3] At that point, the personal representative of Mr. Kell's estate filed a Motion for Equitable Enforcement of the Settlement Agreement in probate court, moving the court to interpret the settlement agreement and order the parties to comply with it.

The state court granted the motion for equitable enforcement, finding that:

> the settlement agreement sets out terms and conditions to resolve the parties' good faith claims and denials in this case; that subsequent to and in conjunction with the agreement, the parties' received substantial distributions; [and] that no party rejected the distributions or raised the issue that the effect of the agreement was not just and reasonable.

(Dkt. # 17 Ex. 4 at 1.) The court further found that the parties "do have a disagreement as to the interpretation of paragraph number 15," but noted that "every party has asked that the

---

[2] The disputed portion of the agreement provided:

> [Plaintiffs] shall execute a Promissory Note (individually and on behalf of their community) in favor of [Defendant]. The principal amount of the Note shall be $6,300,000.00. . . . The Note shall be secured by a pledge [of] (i) the Schedule B assets distributed to [Sperber-Porter]; and (ii) the assets or interests acquired (through Mortgages, Ltd.) by [Sperber-Porter] or any affiliate of [Sperber-Porter] utilizing the proceedings [sic] of any of the assets of the Estate.

(Dkt. # 17 Ex. 3 at 15 ¶ 15.)

[3] More specifically, Defendant objected to the note on the grounds that it lacked an acceleration provision, provided for only a $250 payment penalty, was improperly amortized, and provided as security "partnership interests that could be liquidated into worthless shells." (*See* Dkt. # 17 at 2.)

- 2 -

1  agreement be enforced." (*Id.* at 2.) Thus, the court scheduled a status conference and
2  ordered the parties to prepare a proposed schedule for resolving the issue.

3        Defendant subsequently moved the probate court for summary judgment. Plaintiffs
4  moved to strike Defendant's motion, arguing that the probate court's jurisdiction had ended
5  with approval of final settlement. Plaintiffs also filed an opposition to the motion for
6  summary judgment, arguing that paragraph fifteen of the settlement agreement does not
7  require them to securitize the promissory note as Defendant requested, that Defendant
8  breached the settlement agreement by refusing to accept the note without such security, and
9  that Defendant's breach "excuses the necessity for [Plaintiffs] to tender performance," or at
10 least that Plaintiffs "have no obligation to pay [Defendant] anything until she cures her
11 breach." (Dkt. # 19 Ex. 3 at 16.) Plaintiffs further argued that "Mrs. Kell's breach of the
12 Settlement Agreement[] gives rise to a claim for damages in favor of [Plaintiffs]." (*Id.*)

13       At the same time that Plaintiffs filed their motion to strike in the probate court, they
14 also filed the complaint underlying this action in federal court. (Dkt. # 1.) Plaintiffs made
15 two claims therein: (1) for a declaratory judgment providing that they are not required to
16 securitize the promissory note as Defendant suggests, and also providing that Defendant's
17 rejection of the promissory note discharges Plaintiffs' obligations to pay Defendant anything
18 at all (Dkt. # 9 at 5-7); and (2) for breach of contract "by demanding security under the terms
19 of the Settlement Agreement that she is not entitled to receive and by otherwise disavowing
20 that Agreement." (*Id.* at 7-8.)

21       At the state level, the probate court denied both Defendant's motion for summary
22 judgment and Plaintiffs' motion to strike. The court then set a pretrial conference and
23 scheduled an evidentiary hearing pursuant to *Taylor v. State Farm Mutual Automobile*
24 *Insurance Co.*, 175 Ariz. 148, 854 P.2d 1134 (1993) (authorizing state courts to hold
25 evidentiary hearings to determine whether language in a contract is ambiguous and, if so,
26 whether to proceed to trial). The evidentiary hearing occurred on January 21, 2009.

27       After the evidentiary hearing, but before the state court issued a ruling, Defendant
28 filed a motion to dismiss the federal court case. (Dkt. # 17.) Defendant argued that the case

should be dismissed because it involved a probate matter and also because it was attempting to collaterally attack the state court's determination of its own jurisdiction. Defendant further argued that if the Court did not dismiss the federal case it should at least be stayed pending resolution of the state court proceeding. This Court denied the motion to dismiss but granted a stay pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). (Dkt. # 20.)

The state court has since issued its decision, ruling that paragraph fifteen could only be interpreted as pledging affiliate assets as security on the note: "After considering the evidence presented, the Court finds that there is no other susceptible meaning to the language in question except that Eva [Sperber-Porter] agreed to pledge her affiliates' assets to secure Mrs. Kell's $6,300,000.00 promissory note." (Dkt. # 21 Pt. 2 at 2.) Plaintiffs now asks this Court to reconsider its Order staying the federal action. (Dkt. # 21.)

**DISCUSSION**

**I.  Legal Standard**

A district court can "reconsider" final judgments or appealable interlocutory orders pursuant to Federal Rules of Civil Procedure 59(e) (governing motions to alter or amend judgments) and 60(b) (governing motions for relief from a final judgment). *See Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 466-67 (9th Cir. 1989). A district court can "reconsider" non-final judgments pursuant to Federal Rule of Civil Procedure 54(b) and pursuant to the court's "inherent power rooted firmly in the common law" to "rescind an interlocutory order over which it has jurisdiction." *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 887 (9th Cir. 2001).

However, "[m]otions to reconsider are appropriate only in rare circumstances," *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995), and "[m]ere disagreement with a previous order is an insufficient basis for reconsideration," *Ross v. Arpaio*, No. CV 05-4177, 2008 WL 1776502, at *2 (D. Ariz. Apr. 15, 2008). Such motions "are not the place for parties to make new arguments not raised in their original briefs." *Motorola, Inc. v. J.B. Rodgers Mech. Contractors*, 215 F.R.D. 581, 582 (D. Ariz. 2003).

Similarly, "[a] motion for reconsideration should not be used to ask a court to rethink what the court had already thought through – rightly or wrongly. Arguments that a court was in error on the issues it considered should be directed to the court of appeals." *Downey v. Gen. Mills, Inc.*, No. 04-47-TUC-CKL, 2005 WL 3312766, at *5 (D. Ariz. Dec. 7, 2005) (internal citations and quotations omitted).

As a general principle, "[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).[4] However, if a party seeks to base a motion for reconsideration on newly-discovered evidence, the party must also show that "at the time of the Court's decision, the party moving for reconsideration could not have known of the factual or legal differences through reasonable diligence[.]" *Motorola*, 215 F.R.D. at 586.

Under the specific rules of this District, "[t]he Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g)(1). "Any such motion shall point out with specificity . . . any new matters being brought to the Court's attention for the first time and the reasons they were not presented earlier . . . ." *Id.* "Failure to comply with this subsection may be grounds for denial of the motion." *Id.*

---

[4]"There may also be other, highly unusual, circumstances warranting reconsideration." *ACandS*, 5 F.3d at 1263. No such circumstances are articulated here.

- 5 -

**II.     Analysis**

Although Plaintiffs do not point out the theory under which they seek reconsideration, the only theory that might apply in this context would be that the Court "committed clear error." *Sch. Dist. No. 1J*, 5 F.3d at 1263. In determining that the federal case should be stayed pursuant to *Colorado River*, the Court determined that none of the nine factors it considered weighed against a stay and that many of the factors, including the desirability of avoiding piecemeal litigation, the substantial similarity of the cases, and the impropriety of forum-shopping, weighed strongly in favor of granting a stay. (Dkt. # 20 at 6-12.) Plaintiffs' motion for reconsideration disputes only one of the nine factors the Court discussed – that of the substantial similarity of the cases. (Dkt. # 21.) The essence of Plaintiffs' argument is that the state and federal cases are not substantially similar because "[t]here is not now pending any claim in the state probate court by plaintiffs that Mrs. Kell breached the settlement agreement." (*Id.* at 2.) Plaintiffs assert that their arguments in the state court relating to breach of contract were merely "statements" or "an accusation," and not a "formal claim." (*Id.* at 3.) Thus, Plaintiffs argue that this case, which does include a formal breach of contract claim, is not sufficiently similar to the state case to warrant a stay.

Plaintiffs have failed to establish that the Court committed clear error. First, Plaintiffs have failed to address the import of the other eight factors that, on balance, also weigh in favor of a stay. This is inconsistent with the rule that the relevant factors in a *Colorado River* analysis "are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical checklist.'" *Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)); *see also Holder v. Holder*, 305 F.3d 854, 870-71 (9th Cir. 2002) ("The factors relevant to a given case are subjected to a flexible balancing text, in which one factor may be accorded substantially more weight than another depending on the circumstances of the case . . . ."). Plaintiffs' argument thus fails to establish clear error.

Second, while it is true that the claims before the state and federal courts are not identical, exact parallelism is not required under *Colorado River*. *See Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) ("We agree that exact parallelism does not exist, but it is not required."). Rather, the question is merely the substantial similarity of the claims, which is informed by the parties and issues presented in each case. *See id.* (holding that exact parallelism is not required, but pointing out that "parallel actions are those involving the same parties and issues") (citing *RepublicBank Dallas Nat'l Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987)); *Holder*, 305 F.3d at 868 (holding that a state custody claim and a federal Hague Convention claim were not substantially similar because "[t]he state court's custody determination did not resolve several of the issues critical to the disposition of a Hague Convention petition."); *Silvaco Data Sys., Inc. v. Tech. Modeling Assocs., Inc.*, 896 F. Supp. 973, 976 (N.D. Cal. 1995) (pointing out that "[t]he mere fact that the claims in state and federal court are not based on exactly the same laws does not preclude a finding of substantial similarity" and holding that "[a]lthough the state and federal actions are not identical, they include extremely similar claims that all arise out of the long-standing competitive feud between [the parties]").

Here, as explained in the Court's previous Order, the parties are the same and the issues presented in the two cases are virtually identical. Plaintiffs' declaratory judgment claim raises two issues: whether Plaintiffs were required to securitize the promissory note as Defendant requested and whether Defendant's rejection of the promissory note discharged Plaintiffs' obligation to pay. (Dkt. # 9 at 6, 7.) Both of those issues were likewise raised by Plaintiffs in their opposition to Defendant's motion for summary judgment in the state court. (Dkt. # 19 Ex. 3 at 3, 7-8, 16.) Plaintiffs' breach of contract claim raises the issue of whether Defendant breached the settlement agreement by demanding that Plaintiffs securitize the promissory note in a way with which Plaintiffs disagreed. (Dkt. # 9 at 7.) Plaintiffs' briefing before the state court raises the same issue (Dkt. # 19 Ex. 3 at 4), and in both cases, Plaintiffs argue that the breach entitles them to damages (Dkt. # 9 at 8; Dkt. # 19 Ex. 3 at 16). As the Court previously noted, Plaintiffs are essentially seeking a declaratory or substantive

1  judgment in this Court affirming that their arguments in the state court are correct. Indeed,
2  the focus of litigation in both the state and federal actions is the nature of the settlement
3  agreement and the effect of the parties' behavior thereon. The Ninth Circuit has held that
4  such unity of issues establishes substantial similarity. *See Nakash*, 882 F.2d at 1416 ("After
5  reviewing the pleadings in these cases, we conclude that the two actions are substantially
6  similar. *All of these disputes concern how the respective parties have conducted themselves
7  since Nakash purchased a portion of Guess*.") (emphasis added). Thus, Plaintiffs have not
8  established clear error.

Finally, Plaintiffs do not disagree that the Court's stay of the declaratory judgment claim was proper. Plaintiffs confine their motion to arguing that the Court should not have stayed the breach of contract claim, and Plaintiffs have never disputed that their declaratory judgment claim regarding the meaning of paragraph fifteen of the settlement agreement is identical to the issue before (and now decided by) the state court. Thus, there is no dispute that at least a partial stay was proper. *See In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1171-72 (C.D. Cal. 2008) (explaining that partial stays are appropriate under *Colorado River*). The state court has now resolved the declaratory judgment issue in favor of Defendant. Plaintiffs offer no explanation of how they can maintain that Defendant breached the settlement agreement by refusing to accept a promissory note that, according to the state court, was deficient. Plaintiffs therefore have not established error warranting reconsideration of the Court's Order.[5]

---

[5]This case illustrates the peril inherent in piecemeal litigation that a party may take one court's ruling and attempt to mischaracterize it before another court. Defendant has apparently taken this Court's previous Order as some sort of "guidance" to the state court on whether it should issue a breach of contract award against Plaintiffs. Specifically, Defendant has filed a "notice of district court order" arguing that this Court was suggesting that the state court "may indeed enter a Judgment against [Plaintiffs Sperber-Porter and Svejda] in the amount of $6.3 million." (Dkt. # 21 Pt. 3 at 2.) This Court offered no such "guidance." The Court's Order was limited to a determination of the effect of the pending state case on *Plaintiffs'* breach of contract claim in federal court; this Court offered no opinion related to any breach of contract claim *Defendant* may have.

**CONCLUSION**

Plaintiffs have not established any grounds for reconsideration.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Reconsideration (Dkt. # 21) is **DENIED**.

DATED this 8th day of June, 2009.

_____
G. Murray Snow
United States District Judge